IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY DBA TEXAS BONDING COMPANY | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:21-cv-115 |
| | § § | |
| EMMA JEAN FREEMAN, individually, and d/b/a JF CONSTRUCTION MANAGEMENT GROUP | § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, American Contractors Indemnity Company dba Texas Bonding Company (the "Surety"), files this Original Complaint complaining of Emma Jean Freeman, individually, and d/b/a JF Construction Management Group (collectively, "Defendants") and in support thereof respectfully states as follows:

## I.
## PARTIES

1. American Contractors Indemnity Company dba Texas Bonding Company is a California corporation that is authorized to do business in the State of Texas.

2. Defendant JF Construction Management Group ("JF Construction") is a sole proprietorship whose domicile is in the State of Texas. JF Construction may be served with process by serving Emma Jean Freeman at 6121 Oakway Lane #510, Fort Worth, Texas 76112, or wherever she may be found.

3. Defendant Emma Jean Freeman is an individual citizen of the State of Texas and may be served with process at 6121 Oakway Lane #510, Fort Worth, Texas 76112, or wherever she may be found.

## II.
## STATEMENT OF JURISDICTION

4. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.
## VENUE

5. Venue is proper in this district under 28 U.S.C § 1391 in that (a) Defendants reside in this district in the State of Texas, (b) a substantial part of the events or omissions giving rise to the Surety's claim occurred in this district, and (c) Defendants are subject to personal jurisdiction in this district at the commencement of this action and there is no district in which the action may otherwise be brought.

## IV.
## FACTUAL BACKGROUND

6. The Surety issued performance and payment bonds on behalf of JF Construction in connection with improvements to be performed at two construction projects located in State if Texas. The bonds issued by the Surety include the following bonds (collectively, the "**Bonds**"), for the following projects (collectively, the "**Projects**") and obligees (collectively, the "**Obligees**"):

| BOND NO. | PROJECT | OBLIGEE |
|---|---|---|
| 100429480 | RMC-633978001 Highway Maintenance; Contract No. 12180902 | Texas Department of Transportation |

| 100409886 | RMC-632982001 Vegetation Management | Texas Department of Transportation |

7.   On or about July 22, 2018, to induce the Surety to issue the Bonds, Emma Jean Freeman, individually, and d/b/a JF Construction Management Group executed a *General Indemnity Agreement* (the "Indemnity Agreement") in favor of the Surety for any and all loss or expenses the Surety incurred in connection with issuing the Bonds.   A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "A"** and fully incorporated herein for all purposes.

8.   The Indemnity Agreement provides, in pertinent part, the following:

The Principals and Indemnitors shall, jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses. costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond; (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; or (ix) the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise. The obligations provided for in this paragraph are without regard to whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection.

The Principals and Indemnitors further agree that they shall be liable for, and that the Surety shall be entitled to charge and recover for, any and all payments made by the Surety in the good faith belief that: (l) any Principal or Indemnitor is or has

been in default under this Agreement; (2) the Surety was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of the Surety's rights or interests or to avoid or lessen the Surety's actual or alleged liability. The Surety shall he entitled to the rights and remedies set forth in this Section III and to all of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by the Surety in good faith. The foregoing obligations shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.

9. The Indemnity Agreement defines "Indemnitor" as follows:

"Indemnitor" shall mean and include any and all Principal(s) as hereinafter defined, and each and every person or entity who executes this Agreement as an Indemnitor, together with his/her/its successors and assigns.

10. Under section VIII of the Indemnity Agreement, entitled "Settlements" it states:

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract or Contract.

11. Under section IX of the Indemnity Agreement, entitled "Reimbursement" it states:

In the event of any payment by the Surety, an itemized, sworn statement of the amount of any such payment, invoice(s) or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment and, in the absence of actual fraud, shall be final, conclusive and binding upon any Principal or Indemnitor in any claim, suit or other proceeding by the Surety.

12. On July 17, 2020, the Surety, exercising its Indemnity Agreement rights, requested Defendants to reimburse the Surety for losses incurred under the Bonds in the amount of $235,102.62. A true and correct copy of the July 17, 2020 letter is attached hereto as **Exhibit "B"** and fully incorporated herein for all purposes. The time specified in the request expired without the Surety receiving any reimbursement from Defendants.  As of the date of this filing, Defendants have failed or refused to perform their obligations under the Indemnity Agreement by reimbursing Surety as requested by the July 17, 2020 letter.

13. All conditions precedent to recovery by the Surety from Defendants have occurred or have been performed.

## V.
## CAUSES OF ACTION

### *Count One—Breach of Indemnity Agreement*

14. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 13.

15. JF Construction has failed, delayed, refused, or is unable to pay bills or other indebtedness incurred in connection with the Projects for which the Bonds were issued.

16. Despite demand, Defendants have failed and/or refused to pay the Surety an amount sufficient to reimburse the Surety for losses it incurred under the Bonds.

17. Under the Indemnity Agreement, Defendants are jointly and severally liable to the Surety for all of the Surety's loss and expense, including attorney's fees and interest, in connection with claims on the Bonds.

### *Count Two—Common Law Indemnity*

18. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 13.

19. The Surety has been called upon as a surety for JF Construction to pay for JF Construction's alleged defaults under the Bonds.

20. JF Construction benefitted from the Surety's posting of the Bonds, as JF Construction could not have performed the contracts for which the Bonds were issued without the Bonds.

21. Under the theories of common law indemnity, unjust enrichment, and restitution, the Surety is entitled to payment by Defendants for all of the Surety's loss and expense resulting from issuance of the Bonds.

### *Count Three—Exoneration*

22. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 13.

23. Defendants are jointly and severally liable to the Surety under the Indemnity Agreement for all amounts necessary to exonerate the Surety from liability asserted against it.

### *Count Four—Recovery of Attorneys' Fees and Expenses*

24. The Surety incorporates herein by reference, as if fully set forth, the allegations contained in paragraphs 1 through 13.

25. The Surety is entitled to recover its attorneys' fees and expenses from Defendants under the Indemnity Agreement and, or alternatively, under § 38.001, *et seq.* of the Texas Civil Practice & Remedies Code.

## VI. REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff, American Contractors Indemnity Company dba Texas Bonding Company, respectfully requests that Defendants Emma Jean Freeman, individually, and d/b/a JF Construction Management Group be cited to appear and answer herein and, upon final trial thereof, that the Surety receive:

1. Judgment against Defendants, jointly and severally, in the amount of damages incurred by the Surety;

2. Judgment against Defendants, jointly and severally, for amounts necessary to exonerate the Surety from all liability asserted against it;

3. Attorneys' fees and expenses;

4. Pre-judgment and post-judgment interest at the maximum rate permissible at law or in equity;

5. Costs of court; and

6. Such other and further relief to which the Surety may be justly entitled.

Respectfully submitted,

**WEINSTEIN RADCLIFF PIPKIN LLP**

By: /s/ Gregory M. Weinstein
Gregory M. Weinstein
State Bar No. 21096430
Jennifer C. Ohn
State Bar No. 24100350
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
(214) 865-6126
(214) 865-6140 (Facsimile)
gweinstein@weinrad.com
jennifer@weinrad.com

**ATTORNEYS FOR PLAINTIFF AMERICAN CONTRACTORS INDEMNITY COMPANY DBA TEXAS BONDING COMPANY**